## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| ALICYN BLISSIT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| HOUSING AUTHORITY OF ST. LOUIS COUNTY, and | ) ) ) | |
| | ) | |
| SUSAN ROLLINS, in her official capacity as Executive Director of Housing Authority of St. Louis County, | ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

## **COMPLAINT**

## I. **INTRODUCTION**

1.  Plaintiff Alicyn Blissit is a single mother who has epilepsy.  She brings this action to prevent the Housing Authority of St. Louis County ( "HASLC" ) from terminating her Public Housing lease and evicting her and her minor child from their home on the grounds that she did not make monthly rental payments and failed to follow the requirements of her federally-subsidized housing lease.

2.  As set forth more fully below, Ms. Blissit paid $900.00 to HASLC on November 25, 2015 in reliance on HASLC's promise that it would renew her lease and withdraw its notice of lease termination. Defendant HASLC reneged on its promise and filed an unlawful detainer lawsuit to evict Ms. Blissit. Defendant HASLC also wrongfully denied Ms. Blissit a grievance hearing to challenge her lease termination, failed to acknowledge a reasonable accommodation

1

for her disability, refused to permit her to copy or inspect any documents in HASLC's possession relevant to the termination of her tenancy or her eviction and otherwise violated her rights under federal and common law.

## II. JURISDICTION

3. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (2012) and 28 U.S.C. § 1343(a)(3) (2012) and supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367 (2012). Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202 (2012), and Fed. R. Civ. P. 57 and 65.

4. Plaintiff's claims arise under the United States Housing Act, 42 U.S.C. §§ 1437 et seq. (2012), the Fair Housing Act, 42 U.S.C. § 3604(f) (2012), U.S. Const. amend. XIV, and 42 U.S.C. § 1983 (2012).

## III. PARTIES

5. Plaintiff Alicyn Blissit ("Ms. Blissit") is a resident of St. Louis County, Missouri within the territorial jurisdiction of this Court.

6. Defendant Housing Authority of St. Louis County (HASLC) is a municipal corporation created and existing under the laws of the State of Missouri, Mo. Rev. Stat. §§ 99.010 et seq. (2000), with its principal place of business at 8865 Natural Bridge, St. Louis, Missouri 63121. Defendant HASLC is, and at all relevant times herein, was a public housing agency ("PHA") within the meaning of the United States Housing Act, 42 U.S.C.§§ 1437 et seq. (2012), and 24 C.F.R. §§ 960 and 966 et seq. (2015), and its implementing regulations. Defendant HASLC contracts with the United States Department of Housing and Urban Development ("HUD") to administer federal rental assistance through the Public Housing Program for St. Louis County residents.

7. Defendant Susan Rollins is the Executive Director of HASLC, and as such, she is responsible for the operation and administration of HASLC's programs including, and without limitation, the Public Housing Program. She is being sued in her official capacity as Executive Director. Defendant HASLC and Rollins are referred to collectively as the Housing Authority Defendants.

## IV.  STATUTORY AND REGULATORY FRAMEWORK

8. Congress created the Public Housing Program codified as a part of the United States Housing Act at 42 U.S.C. §§ 1437 et seq. (2012).

9. Under the Public Housing Program, HUD provides operating subsidies to local PHAs, such as HASLC, which own and operate housing for eligible low-income families and individuals. 42 U.S.C. §1437a(b)(6) (2012). Tenants of public housing pay their PHA's monthly rent that is substantially below the cost of rental housing in the open market.

10. Public housing tenants have rights from several sources, including: the United States Housing Act; federal and state constitutions; HUD regulations, handbooks, circulars, and notices; and the PHA's policies (which are often stated in the PHA Administrative Plan and Admission and Continued Occupancy Plan (ACOP)), as well as the lease.

11. Public housing leases have a 12-month term. However, the leases are automatically renewed on an annual basis and cannot be terminated by a PHA except for "serious or repeated violation of the terms of the lease or for other good cause." 42 U.S.C. § 1437d(l)(5) (2012) and 24 C.F.R. § 966.4(l)(2)(i) and (iii) (2015).

*12.* HUD regulations list several grounds for termination of tenant's Public Housing tenancy. 24 C.F.R. § 966.4(l)(2) (2015). Some violations mandate termination and others are permissive. *Id.*

13. Should the PHA decide to terminate a tenant's Public Housing tenancy, 42 U.S.C. § 1437d(k) (2012) entitles the participant to a specific grievance procedure which includes, inter alia, to be advised of the specific grounds of any proposed adverse PHA action, the right to notice and the opportunity for an informal meeting prior to the actual termination of the benefits, and finally, a formal grievance hearing before an impartial decision maker that provides the basic safeguards of due process. 24 C.F.R. §§ 966.50 - .57, 966.4(l) – (n) (2015).

14. HUD regulations also require that if a tenant submits a timely grievance, then the PHA cannot terminate the tenancy until completing the grievance procedure. 24 C.F.R. § 966.4(l)(3)(C)(iv) (2015).

15. The decision of a hearing panel is binding on the PHA. 24 C.F.R. §  966.57(b) (2015).

*Reasonable Accommodation for a Disability under the Fair Housing Act*

16. Under federal and state fair housing laws, landlords must make reasonable accommodations for a tenant's disability in their policies, rules, and practices. 42 U.S.C. § 3604(f)(3)(B) (2012).

17. The Fair Housing Act's 1988 Amendment (FHA), is the primary federal statute that protects the housing rights of people with disabilities. 42 U.S.C. §§ 3601-3619 (2012). If the housing receives any type of government funding, Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act also apply.

18. An individual has a disability if that person has (1) a physical or mental impairment that limits one or more life activities, or (2) a history of such impairment, or (3) is regarded as having such impairment. 42 U.S.C. § 3602(h) (2012).

19. An accommodation is defined as a change to a rule, policy, practice, service, or procedure when such accommodations are necessary to afford a disabled person equal opportunity to use or enjoy the dwelling or program. 42 U.S.C. § 3604(f)(3)(B) (2012).

20. The Department of Justice (DOJ) and HUD are jointly responsible for enforcing the federal Fair Housing Act.  They have stated that the Fair Housing Act does not require that a request be made in a particular manner or at a particular time.   See The United States Department of Justice and the United States Department of Housing and Urban Development, *Joint Statement of the Department of Housing and Urban Development and the Department of Justice – Reasonable Accommodations under the Fair Housing Act*, (May 7, 2004), http://www.hud.gov/offices/fheo/library/huddojstatement.pdf.

## V. STATEMENT OF FACTS

21. Ms. Blissit rents the premises at 39 Cheryl Lane, Apartment D, St. Louis, Missouri 63088 from Defendant HASLC pursuant to a written lease under the Public Housing Program of the United States Housing Act, 42 U.S.C. §§1437 et seq. (2012); and 24 C.F.R. §§ 960 and 966 et seq. (2015).

22. She has resided at the above address with her minor child since December 2013.

23. As a low-income public housing tenant, Ms. Blissit's rent is based on her income. Per the mandatory HUD regulation at 24 C.F.R § 960.257 (2015).  Defendant HASLC is obligated to set Ms. Blissit's rent based on her tenant family composition and income.  Initially, HASLC set her rent at $58 per month.   But, in approximately June, 2014,  HASLC increased Ms. Blissit's  rent to $98.00 per month.

24. At all material times herein, Ms. Blissit suffered from  a seizure disorder that causes, among other problems, headaches, memory loss, and substantially limits a major life

5

activity. As a result, she is and, at all material times herein, was an individual with a disability within the meaning of the Fair Housing Act.

25. Despite her disability, Ms. Blissit endeavored to work.

26. In February 2015, she lost her job at Taco Bell. As a result, she fell behind on her rent.

27. Although Ms. Blissit immediately notified Defendant HASLC's agent and apartment manager that she had lost her job and her change in income, Defendant HASLC never reduced her rent.

28. Instead, Defendant HASLC continued to charge Ms. Blissit $98.00 per month for rent from March 2015 through May 2015 which HASLC based on Ms. Blissit's income prior to her job loss.

29. However, Ms. Blissit's total income during this time period was approximately $97.50 per month in unemployment compensation – an amount insufficient to pay the $98 per month rent set by HASLC.

30. On approximately October 23, 2015, Defendant HASLC gave Ms. Blissit a termination of lease notice ("Notice") in which Defendant demanded Ms. Blissit vacate her home on or before November 30, 2015. In the Notice, Defendant alleged Ms. Blissit violated the lease by the non-payment of rent, repeated late payments of rent, failing to keep appointments to complete the recertification of her tenancy and to provide information for the annual recertification of her tenancy. The Notice informed Ms. Blissit that she had 10 days from the date of the Notice to request a grievance hearing.

31. After receiving the Notice, Ms. Blissit called Defendant's main office and spoke with Ellen White, Defendant's Director of Public Housing. At all material times herein, Ms.

White was an employee of Defendant HASLC acting within the course and scope of her employment authority.

32. Ellen White told Ms. Blissit she could resolve the lease termination matter and renew the lease if Ms. Blissit paid HASLC $882.00 by November 30, 2015.

33. On November 25, 2015. Ms. Blissit's father, Rommie Blissit, paid $900.00 to HASLC on Ms. Blissit's behalf. He delivered the funds to Defendant's Arbor Hill management office.  Pam Weatherford, Defendants' agent, gave Rommie Blissit a receipt,  a copy which is attached hereto as Exhibit 1.

34. Ms. Blissit saw no need to request a grievance hearing because she paid all of the monies requested by Ellen White (plus an additional $18.00) in a timely manner. Ms. Blissit reasonably understood and believed HASLC would withdraw its Notice and renew her lease based on the representation and promise that Ms. White made on behalf of HASLC.

35. Defendant HASLC, however, reneged on its promise. On December 4, 2015, Defendant HASLC filed an unlawful detainer action against Ms. Blissit in the Circuit Court of the County of St. Louis, Missouri (Associate Circuit Division) Cause No. 15SL-AC30522 (the "Unlawful Detainer Action").

36. Ms. Blissit did not know about Defendant HASLC's breach of its promise until after HASLC filed the Unlawful Detainer Action. Shortly after receiving notice of the Unlawful Detainer Action, Ms. Blissit submitted a written request to HASLC for a grievance hearing to challenge her lease termination.

37. Her grievances include not only HASLC's breach of its promise to withdraw the lease termination, but legitimate disputes about the underlying reasons HASLC gave for her

7

lease termination, namely late or non-payment of rent and her failure to keep appointments for the recertification and to provide information for the recertification.

38. Ms. Blissit's late and missed rent payments directly relate to HASLC's failure to timely recalculate her rent after she notified HASLC that she lost her job and her income decreased.

39. Ms. Blissit's alleged failure to keep appointments or provide information for the recertification of her tenancy is directly related to her disability and cognitive disabilities. In January and February 2016, Ms. Blissit's counsel emailed HASLC's counsel to request a reasonable accommodation for Ms. Blissit. Attached to the emails were copies of Ms. Blissit's medical records documenting her disability. On information and belief, HASLC knew or had reason to know of Ms. Blissit disability prior to January 2016.

40. To date, HASLC has ignored Ms. Blissit's request for a reasonable accommodation. HASLC has neither responded to the request nor acknowledged receipt of the request.

41. Ms. Blissit's counsel also emailed HASLC's counsel another request for a grievance hearing on February 12, 2016. But HASLC has ignored this request too.

42. Ms. Blissit's counsel has requested HASLC to produce documents in its possession directly relevant to the termination of Ms. Blissit's lease and her eviction. However, HASLC's counsel has refused to respond to the discovery. Copies of the Request for Production and HASLC's counsel response are attached hereto as Exhibit 2.

43. Per HUD's mandatory federal regulations at 24 C.F.R. §966.4(l)(3)(c)(iv) (2015), the public housing tenancy shall not terminate until the completion of the grievance process.

8

44. Per HUD's mandatory federal regulations at 24 C.F.R. §966.4(m) (2015) if a PHA does not make documents that are directly relevant to the termination of a tenant's lease or eviction available for inspection and copying upon the request of a tenant, the PHA may not proceed with the eviction

45. HASLC is proceeding with its eviction. On June 6, 2016, HASLC filed a motion for summary judgment on its Unlawful Detainer lawsuit and has scheduled the motion for hearing on July 19, 2016.

46. As a direct and proximate result of the Housing Authority Defendants' acts and omissions described above, Ms. Blissit has suffered and continues to suffer worry, anxiety, humiliation, and other damages in an amount that is presently undetermined but believed to be in excess of $25,000.

47. On information and belief, the acts and omissions of the Housing Authority Defendants described above were willful and malicious and entitle Ms. Blissit to punitive damages.

48. At all relevant times to this action, Ms. Blissit remained financially eligible for, and in need of, housing assistance under the Public Housing Program.

49. Ms. Blissit has no adequate remedy at law and will suffer irreparable harm if her assistance under the Public Housing Program is not immediately reinstated or accommodated.

50. Without maintaining her participation in the Public Housing Program, Ms. Blissit's monthly income is insufficient to enable her to locate affordable alternate housing.

### VI. CLAIMS FOR RELIEF

### COUNT I

**Violation of the United States Housing Act 42 U.S.C. § 1437d(k)
and 42 U.S.C. § 1983**

51. Ms. Blissit repeats, realleges, and incorporates by reference paragraphs 1 through 50 above as fully as if set forth verbatim herein.

52. By failing and refusing to grant Ms. Blissit a grievance hearing, the Housing Authority Defendants violated Ms. Blissit's rights under 42 U.S.C. § 1437d(k) (2012) and its implementing regulations and 42 U.S.C. § 1983 (2012).

53. By refusing to respond to Ms. Blissit's counsel's request for the production of documents in HASLC possession directly relevant to the termination of Ms. Blissit's lease and her eviction and then filing a summary judgment motion on their Unlawful Detainer lawsuit and scheduling the motion for hearing, the Housing Authority Defendants violated 42 U.S.C. § 1437d(k)(3) (2012) and 42 U.S.C. § 1983 (2012).

## COUNT II

### Violation of the Fair Housing Act
### 42 U.S.C. § 3604(f)

54. Ms. Blissit repeats, realleges and incorporates herein by reference paragraphs 1 through 53 above as fully as if set forth verbatim herein.

55. By refusing to acknowledge Ms. Blissit's request for reasonable accommodation, and refusing to begin the interactive process to determine any available reasonable accommodation, the Housing Authority Defendants refused to make a reasonable accommodation in HASLC's rules, policies, practices, and services necessary to afford Ms. Blissit an equal opportunity to use and enjoy her public housing unit in violation of the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B) (2012).

## COUNT III

### Violation of the Fourteenth Amendment to the United States Constitution and
### 42 U.S.C. § 1983

56. Ms. Blissit repeats, realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 55 above as fully as if set forth verbatim herein.

57. By terminating Ms. Blissit's participation in the Public Housing Program on grounds that are not authorized by law, Defendants are depriving Ms. Blissit of her property interest in continued occupancy of her dwelling without adequate procedural due process in violation of the Due Process Clause of the 14th Amendment to the United States Constitution and 42 U.S.C. § 1983 (2012).

## COUNT IV

### Breach of Contract

58. Ms. Blissit repeats, realleges, and incorporates by reference paragraphs 1 through 57 above as fully as if set forth verbatim herein.

59. Ellen White, acting for and on behalf of Defendant HASLC, promised Ms. Blissit that HASLC would withdraw the lease termination notice and renew her lease if Ms. Blissit paid HASLC the sum of $882.00 by November 30, 2015.

60. Ms. Blissit, through her father Rommie Blissit, paid Defendant HASLC $900.00 on November 25, 2015 and complied with all conditions precedent to the enforcement of her agreement with HASLC.

61. The Housing Authority Defendants breached HASLC's agreement with Ms. Blissit by failing and refusing to renew her lease, refusing to withdraw her lease termination, and filing the Unlawful Detainer Action.

62. Ms. Blissit has no adequate remedy at law and will suffer irreparable harm unless the Housing Authority Defendants are ordered to perform their agreement by renewing her lease, withdrawing the lease termination, and dismissing their Unlawful Detainer Action.

## COUNT V

## Promissory Estoppel

63. Ms. Blissit repeats, realleges, and incorporates by reference paragraphs 1 through 62 above as fully as if set forth verbatim herein.

64. Ellen White, acting for and on behalf of Defendant HASLC, promised Ms. Blissit that HASLC would withdraw the lease termination and renew her lease if she paid HASLC the sum of $882.00 by November 30, 2015.

65. Ms. Blissit relied to her detriment on Defendant HASLC's promise in that she paid HASLC $900.00 on November 25, 2015 and reasonably understood and believed that the lease termination would be withdrawn, her lease would be renewed, and that it was no longer necessary for her to request a grievance hearing before the November 30, 2015 deadline set forth in HASLC's Notice.

66. The Housing Authority Defendants knew or reasonably could have foreseen that Ms. Blissit would rely upon HASLC's promise and, that after she paid HASLC $900.00 on November 25, 2015, she would be lulled into believing that her lease would be renewed, the Notice would be withdrawn, and that it would not be necessary to request a grievance hearing on or before November 30, 2015.

67. The Housing Authority Defendants breached HASLC's promise to Ms. Blissit by failing and refusing to renew her lease, refusing to withdraw her lease termination, and filing the Unlawful Detainer Action.

68. Injustice can only be avoided by the enforcement of HASLC's promise and by requiring the Housing Authority Defendants to renew Ms. Blissit's lease, withdraw the lease termination Notice, and dismiss HASLC's Unlawful Detainer Action.

## COUNT VI

### Declaratory Judgment

69. Ms. Blissit repeats, realleges, and incorporates by reference paragraphs 1 through 68 above as fully as if set forth verbatim herein.

70. Defendant HASLC accepted the $900.00 paid by Ms. Blissit's father, Rommie Blissit, on November 25, 2015 after HASLC issued its Notice.

71. Defendant HASLC knew when it accepted the $900.00 payment that Ellen White, the Public Housing Director, previously represented to Ms. Blissit that HASLC would withdraw the lease termination and renew the lease if Ms. Blissit paid $882.00 by November 30, 2015.

72. By accepting the $900.00 payment, HASLC waived its right to declare a forfeiture of Ms. Blissit's lease.

73. An actual case or controversy exists between Ms. Blissit and HASLC regarding her rights under the lease.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Alicyn Blissit prays that this Court:

1) Enter a declaratory judgment that the actions and omissions of the Housing Authority Defendants set forth above violate the United States Housing Act, 42 U.S.C. § 1437d(k) (2012), the Fair Housing Act, 42 U.S.C. § 3604(f)(3)(B) (2012), the Due Process Clause of the 14th Amendment to the United States Constitution, and 42 U.S.C. § 1983 (2012).

2) Enter a declaratory judgment that the Housing Authority Defendants waived their rights to declare a forfeiture of Plaintiff's lease on the grounds set forth in their Notice when they accepted Plaintiff's $900.00 payment.

3) Enter preliminary and permanent injunctive relief:

13

      a)      Enjoining the Housing Authority Defendants to grant Plaintiff a grievance hearing.

      b)      Enjoining the Housing Authority Defendants to restore Plaintiff's participation in the Public Housing Program retroactive to the date of its termination, to issue Plaintiff a new lease, to refrain from pursuing any eviction actions against her based upon failure to pay rent or failure to recertify, and to dismiss their Unlawful Detainer Action.

      c)      Enjoining the Housing Authority Defendants to assess and grant the reasonable accommodations requested by Plaintiff to allow her to utilize and possess her home just as any other tenant participating in HASLC's administration of the Public Housing Program.

      d)      Enjoining the Housing Authority Defendants from terminating Plaintiff's tenancy without making such reasonable accommodations for her disabilities.

      e)      Enjoining the Housing Authority Defendants from proceeding with the eviction of Plaintiff without permitting Plaintiff's counsel to examine and copy all documents in HASLC's possession directly relevant to the termination of Plaintiff's tenancy or her eviction.

4)      Award Plaintiff actual damages in such amount as may be proven at trial and punitive damages in such amount as are fair and reasonable.

5)      Award Plaintiff her expenses and costs and her reasonable attorney's fees.

6)      Grant Plaintiff such other and further relief as the Court deems necessary and proper.

Respectfully submitted,

LEGAL SERVICES OF EASTERN MISSOURI, INC.


By /s/ *Daniel E. Claggett*
Daniel E. Claggett #26982 MB
Susan M. Alverson, #35109 MB
Jacki J. Langum, #58881 MB
Lee R. Camp, #67072 MB
4232 Forest Park Avenue
St. Louis, MO 63108
314-534-4200/314-534-1028 fax
declaggett@lsem.org
smalverson@lsem.org
jjlangum@lsem.org
lrcamp@lsem.org

ATTORNEYS FOR PLAINTIFF